IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO ELLISON, | ) | CASE NO. 3:05 CV 967 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| ROB JEFFRIES, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.  Introduction

Before the Magistrate Judge by referral[1] is the petition of Antonio Ellison for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] Ellison, who was convicted in a bench trial of one count of trafficking in drugs and one count of  possession of drugs,[3] is now incarcerated in North Central Correctional Institution at Marion, Ohio,[4] serving a ten-year term.[5]

In his two grounds for relief, Ellison asserts:  (1) that the state denied him due process by failing to comply with Ohio law in arranging the "reverse buy" drug transaction for which he was convicted, and (2) that he was denied effective assistance of trial counsel when

---

[1] ECF # 10.

[2] ECF # 1.

[3] *State v. Ellison*, No. CR-01-2637, 2003 WL 22946188, at *1 (Ohio App. 6 Dist. Dec. 12, 2003).

[4] ECF # 1 at 1-2.

[5] *See*, ECF # 7 at 2.

counsel (a) did not challenge the legal foundation of the "reverse buy," (b) pressured Ellison to waive a jury, and (c) only minimally cross-examined the state's witnesses.[6]

The state, in response, initially contends that Ellison's first ground for relief concerning Ohio's "reverse buy" statute is essentially a state law claim with the veneer of a single catch-all federal "due process" reference that is both insufficient to warrant consideration by a federal habeas court and, in any event, was never fairly presented as a federal claim to Ohio courts.[7] In addition, the state maintains that the Ohio appellate court correctly applied *Strickland*[8] to find that Ellison's trial counsel was not constitutionally ineffective in the particular areas raised by Ellison.[9]

For the reasons developed below, the Magistrate Judge recommends finding that the state's positions are well-taken.  It is further recommended that Ellison's petition be dismissed in part and denied in part.

## II.  Statement of the Facts and of the Case

As found by the state appeals court, an informant testified at trial that Ellison approached him asking about a drug deal months before the informant began cooperating with police.[10] Although Ellison disputed the informant's testimony concerning who initiated

---

[6] ECF # 1 at 3-5.

[7] ECF # 7 at 6-8.

[8] *Strickland v. Washington*, 466 U.S. 668 (1984).

[9] ECF # 7 at 12-16.

[10] *Ellison,* 2003 WL 22946188, at *3.

the discussion about purchasing drugs, the appellate court found that the evidence, which included recorded phone conversations between the informant and Ellison, indicated that Ellison was predisposed to buy cocaine and "willingly involved himself in the criminal activity."[11]  Pursuant to Ohio's "reverse buy"statute,[12] two kilos of cocaine from the Toledo Police property room were supplied to the informant who, in turn, sold them to Ellison.[13]

After initially entering a plea of not guilty, and following several continuances, Ellison was tried at a two-day bench trial, convicted on both counts, and sentenced to serve a ten-year term on each count, with the sentences to be served concurrently.[14]

Ellison, represented by different counsel than at trial,[15] thereupon timely appealed the conviction, but the appeal was dismissed *sua sponte* for failure to include assignments of error.[16]  After moving for,[17] and being granted,[18] reconsideration of the dismissal, Ellison raised the following three assignments of error to the state appeals court:

> 1.   The trial court committed reversible error in finding [Ellison] guilty of the offenses as charged in the indictment, as such finding was against the manifest weight of the evidence.  There was sufficient evidence

---

[11] *Id.*

[12] Ohio Rev. Code § 3719.141.

[13] *See*, ECF # 1 at 3-4.

[14] *Ellison*, 2003 WL 22946188, at *1.

[15] *See*, ECF # 1 at 6 (list of counsel at stages of case).

[16] ECF # 9, Ex. D.

[17] *Id.*, Ex. E.

[18] *Id.*, Ex. F.

presented at trial to establish the defense of legal entrapment. There was a failure on the trial court's part to make specific findings on those relevant factors that must be considered in such defense, which are necessary to support a finding and order of guilt.

2.    The trial court committed reversible error in improperly assuming that the state had the authority under Section 3719.141 O.R.C. to implement a "reverse buy" with [Ellison] in the form and manner as described in the drug transaction, and further that the state had met all of the necessary statutory criteria to proceed in implementing such transaction.

3.    [Ellison] received ineffective assistance of counsel during the course of the trial court proceedings in violation of his Fifth, Sixth and Fourteenth Amendment rights to (sic) the United States Constitution, which denied [him] a fair trial.[19]

The state filed a response,[20] and the appeals court denied all of Ellison's assignments of error and affirmed the decision of the trial court.[21]

Ellison, now proceeding pro se, thereupon appealed to the Ohio Supreme Court, asserting two propositions of law:

1.    When the state engages in a "reverse buy" drug transaction, without strict adherence to the provisions of R.C. 3719.141, the reverse buy is a nullity and either any evidence derived from the reverse buy must be suppressed or any prosecution based on the reverse buy must be dismissed.

2.    When defense counsel in a criminal case does not challenge the authority of the police to pursue the investigation they did, does not engage in meaningful cross-examination, and urges an early recess at the end of the first day of trial because he has many cases scheduled for

---

[19] *Id*., Ex. G. *See also*, *Ellison*, 2003 WL 22946188, at *1.

[20] *Id.*, Ex. H.

[21] *Ellison*, 2003 WL 22946188, at *5.

-4-

trial the next day and has to find someone to cover for him, counsel is deficient, and when the case is close, counsel is ineffective.[22]

The state filed a response,[23] but, on April 14, 2004, the Ohio Supreme Court dismissed the appeal as not involving a substantial constitutional question.[24]  It does not appear from this record that Ellison sought a writ of certiorari from the United States Supreme Court.

Exactly one year after the dismissal of his appeal by the Ohio Supreme Court, Ellison, pro se, filed the present federal habeas petition, propounding two grounds for relief:

1.    The state's failure to strictly adhere to the requirements set forth in Ohio Revised Code 3719.141 in order to perfect a "reverse buy" in a drug transaction effectively denied petitioner his Constitutional right to due process of law.

2.    Petitioner received ineffective assistance of counsel during the course of the trial court's proceedings in violation of his Fifth, Sixth and Fourteenth Amendment rights afforded to him under the United States Constitution.[25]

As previously noted, the state filed a return of writ asserting that Ellison has not exhausted his first ground because it was not fairly presented to Ohio courts[26] and, in addition, that the claim is one of state law and is, thus, not cognizable in a federal habeas action.[27]  As to Ellison's second stated ground for relief, the state contends that the state

---

[22] ECF # 9, Ex. J.

[23] *Id.*, Ex. K.

[24] *Id.*, Ex. L.

[25] ECF # 1 at 3.

[26] ECF # 7 at 5-8.

[27] *Id.* at 10-12.

appeals court properly reviewed the claim under the *Strickland* rubric[28] and, in rejecting the claim, did not act unreasonably in applying that standard.[29]

Ellison did not file a traverse.  As noted, the matter was referred to the Magistrate Judge for a report and recommendation.[30]

### III.   Analysis

**A.    Ground one – claiming failure to comply with Ohio's "reverse buy" statute – is unexhausted since any federal claim in this respect was never fairly presented to Ohio courts.**

Prior to seeking federal habeas relief, state prisoners must first exhaust available state court remedies by fairly presenting federal claims to the highest court in the state.[31]  This requirement is normally met by having the state prisoner present his federal claim through one round of the state's established review procedure.[32]  Federal habeas courts lack jurisdiction to address any claim that is not exhausted as a result of having first been fairly presented to the state courts.[33]

---

[28] *Strickland*, 466 U.S. at 687-89.

[29] ECF # 7 at 12-16.

[30] ECF # 10.

[31] *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

[32] *O'Sullivan v. Boerkel*, 526 U.S. 838, 842 (1999).

[33] *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner bears the burden of proving that his grounds for relief have been exhausted.[34]  In the context of fair presentment, he must show that his purported grounds for relief were fairly presented as specifically federal claims before the state court.[35]  The Sixth Circuit has identified four ways by which a petitioner may fairly present both the legal and factual basis of his federal claim to the state court:

> (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law.[36]

A federal habeas petitioner does not fairly present a federal claim to a state court merely by reciting the facts underlying the claim[37] nor by making general allegations that "due process" or "fair trial" rights have been violated within the context of other non-constitutional arguments.[38]  As the Sixth Circuit has succinctly stated, fair presentment means that the "same claim, under the same theory," must be first presented to the state court as is presented in the federal habeas petition.[39]

---

[34] *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

[35] *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004).

[36] *Id.* at 400.

[37] *Picard v. Connor*, 404 U.S. 270, 277 (1971).

[38] *Blackmon*, 394 F.3d at 400.

[39] *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004), citing *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987).

-7-

Here, in both the state appellate court and the Ohio Supreme Court, Ellison claimed that the police did not follow Ohio's "reverse buy" statute in his case for one of two related reasons:  either because (1) the statute cannot provide the authority for police conduct in his case, or (2) because the particular police action did not conform to an otherwise relevant statute.[40]  In both making both arguments, Ellison relied entirely upon Ohio law.  The state appeals court accordingly decided the issue entirely as a matter of Ohio law, finding that the "reverse buy" statute itself does not provide a basis for a criminal defendant to allege non-compliance.[41]

Now, in his federal habeas petition, Ellison repeats his claim that the state failed to "strictly adhere" to the statute's requirements, but adds, for the first time, that such failure to strictly follow the statute denied him "his constitutional right to due process."[42]  As noted, Ellison's argument seems to be that while the statute gives a "peace officer" the power to conduct a "reverse buy," it is silent as to a transaction conducted by a police informant.

Whatever the merit of his position as to the authority inherent in the Ohio statute, the relevant inquiry now is whether Ellison framed his claim as a federal constitutional argument

---

[40] *See*, ECF # 9, Ex. G (brief to appeals court) and Ex. J (brief to Ohio Supreme Court). Ellison appears to contend that because the statute contemplates that a purchaser would acquire the drug "in the presence of the peace officer who made the sale" (Ohio Rev. Code § 3719.141 (A)(2)(c)) and because he acquired the drug from an informant, not a police officer, the transaction in his case was either not authorized by statute or done in violation of the statute.  *See*, ECF # 1 at 5.

[41] *Ellison*, 2003 WL 22946188, at *4.

[42] ECF # 1 at 3.

-8-

before the Ohio courts.  If he did not, a federal habeas court may not now be the first court to consider it.

Employing the four-part test of *Blackmon* to analyze Ellison's state claims, the Magistrate Judge recommends finding that Ellison did not advise Ohio courts in any way that he was making a claim for relief based on a purported violation of federally secured rights related to Ohio's "reverse buy" statute.  Thus, as the *Hicks* court stated, the claim now presented in his federal habeas petition is not the "same claim, under the same theory" as that presented to the Ohio courts and, so, should be dismissed.

**B.  Ground two - claiming ineffective assistance of trial counsel – is without merit because the state court reasonably applied the clearly established federal law of *Strickland v. Washington*.**

*1.  Standard of review*

Where a state court correctly identifies clearly established federal law and then applies it to a claim, a federal habeas court may grant the writ only if that state decision was an "unreasonable application" of such clearly established federal law.[43]  The proper inquiry under this analysis is whether the state court holding was "objectively unreasonable," not simply erroneous or incorrect.[44]

*2.  Ineffective assistance of counsel – the clearly established federal law*

The governing standard for assessing claims of ineffective assistance of counsel was articulated in *Strickland v. Washington* as follows:

---

[43] *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).

[44] *Id.* at 409-11.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose results are unreliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown of the adversary process that renders the result unreliable.[45]

Both prongs of the test must be met to support the grant of the writ, but courts are not required to conduct an analysis under both prongs; thus, a court need not address the question of competence if there is no proof of prejudice.[46]

With respect to the first, or "deficiency," prong of this test, the *Strickland* court stressed that review must be "highly deferential."[47] Courts must "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[48]

In that regard, a court may not indulge in hindsight, but must evaluate the reasonableness of counsel's performance in the context of the circumstances existing at the time of the alleged error.[49] Thus, it is particularly difficult to attack trial counsel's tactical

---

[45] *Strickland*, 466 U.S. at 687.

[46] *Id*. at 697.

[47] *Id.* at 689.

[48] *Id.* at 690.

[49] *Id.*

decisions.[50]  A defendant's challenge to such decisions must overcome a presumption that the challenged action was in furtherance of sound trial strategy.[51]

To satisfy the second or "prejudice" prong of the *Strickland* test, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[52]  Where one is left with pure speculation as whether the result would have been different, there has not been a sufficient showing of prejudice.[53]

On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."[54]

### 3.     *The state appeals court did not unreasonably apply Strickland in finding that Ellison did not receive ineffective assistance of counsel.*

Here, the state appeals court first correctly articulated the two-part *Strickland* test.[55] Next, the court restated Ellison's assertions that counsel was ineffective in (1) not filing

---

[50] *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

[51] *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986).

[52] *Strickland*, 466 U.S. at 694.

[53] *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004).

[54] *Strickland*, 466 U.S. at 686.

[55] *Ellison*, 2003 WL 22946188, at *4.

-11-

pretrial challenges to the "reverse buy" statute; (2) making only one objection during trial; and (3) conducting a substandard cross-examination of all the state's witnesses.[56]

The state court first noted that objecting to the use of the "reverse buy" statute would have been "futile" since Ohio courts had ruled that it did not provide any means by which a defendant could assert non-compliance by police.[57]  Next, it concluded that, without more, merely asserting that defense counsel had not made enough objections simply states a difference over trial strategy that does not reach the level of ineffective assistance.[58]  Finally, it likewise found that the extent of cross-examination is also largely a matter of trial strategy and not a basis for finding ineffective assistance.[59]

Ellison here attempts to overcome the presumption that his counsel rendered adequate representation by arguing that the trial attorney was facing a schedule that required him to try eighteen cases the day after Ellison's trial was set to begin.[60]  He contends that this heavy workload led counsel to cut corners and deliver constitutionally deficient representation.[61]

Whatever the burdens on counsel imposed by his trial schedule and however that burden may have affected the thoroughness of his representation at trial, Ellison has made

---

[56] *Id.*

[57] *Id.*, at *5.

[58] *Id.*

[59] *Id.*

[60] ECF # 1 at 5.

[61] *Id.*

no showing of prejudice from any of these asserted errors by counsel.  The evidence at trial is that prior to the informant cooperating with police, Ellison approached the informant about doing a drug deal in conversations that were recorded and then purchased drugs from that informant.  If, as construed by Ohio courts, the "reverse buy" statute imposes standards and procedures on local police for the benefit of the state in ensuring control over drugs held by police departments, and does not create a means by which a criminal defendant can invoke non-compliance to evade the consequences of making a buy of drugs provided in this way, then there is nothing to support a finding that, absent counsel's purported errors, the result at trial would have been different.

Thus, completely apart from the deficiency prong arguments advanced by Ellison, there is no showing of any prejudice as would be needed to grant the writ under *Strickland*.

That said, even if trial counsel was pushed by his schedule, Ellison has still not shown that, in the context of this case, the actions complained of were constitutionally deficient.  As noted by the state court, there is no requirement that counsel make pre-trial motions that advance an unsupportable legal theory.  Nor is counsel required to extensively cross-examine witnesses or make multiple objections where the essential facts are not in dispute.

Accordingly, the Magistrate Judge recommends that Ellison's second ground for relief be denied since the state court decision was not an unreasonable application of clearly established federal law.

## IV.   Conclusion

For the foregoing reasons, the Magistrate Judge recommends that ground one of Ellison's petition be dismissed and that ground two be denied.

Dated:   March 16, 2007                 s/ William H. Baughman, Jr.
                                      United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[62]

---

[62] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).